February 24, 1936. The opinion of the Court was delivered by
This action was commenced in the Court of Common Pleas for Darlington County on November 26, 1924, for the collection of an insurance policy issued upon the life of J.S. Josey by appellant in the sum of $3,000.00. The application for the insurance was made October 30, 1918, and Josey died November 26, 1918.
The original was, upon motion, allowed to be amended in May, 1933, and the case was tried in October, 1933, resulting in a verdict for respondent for the full amount with interest from January 26, 1919.
The second paragraph of the complaint as amended, the portion in italics showing the amendments to the original complaint, is as follows:
"2. That, upon information and belief, on or about October 30, 1918, at Lydia, in the County of Darlington, South Carolina, upon the solicitation of the defendant's agent J. S. Josey applied for a policy of life insurance in defendant's Life Insurance Company, said policy to be for Three Thousand Dollars ($3,000.00), and payable to the estate of the said J.S. Josey; and at said place and at the same time the said J.S. Josey paid the first year's premium on said policy amounting to Sixty-one and 17/100 Dollars ($61.17), which was paid to the agent of the said company as the first year's premium on said policy, and accepted by the agent as such and that by so accepting the said premium *Page 352 in advance along with the application, the defendantbecame liable to the estate of the insured, plaintiff's intestate,for the full face of the policy from the date of the application.
In accordance with said application and the payment by J.S. Josey of the premium for the first year on said policy, the defendant by its agents duly authorized, made, issued and delivered its certain policy of insurance in writing upon the life of the said J.S. Josey for the sum of Three Thousand ($3,000.00) Dollars, payable to the estate of said J.S. Josey. But that the policy or contractevidencing the terms and conditions of the contractual relationsbetween plaintiff's intestate and the defendant was unreasonablyand unwarrantably neglected and delayed in itsissuance and delivery by the negligence and carelessness ofthe defendant, its agents and representatives, and in utterdisregard of the rights of plaintiff's intestate according tohis application received and accepted by the said companytherefor."
The application for the insurance, signed by Mr. Josey, contained, among other provisions, the following:
"3. That the Company shall incur no liability under this Application until it shall have been received and approved at the Home office of the said Company, the Policy issued, and delivered to me during my lifetime and good health and the first premium paid and accepted by the Company or its authorized agent."
The form of receipt issued the said J.S. Josey, he having executed his promissory note payable to Forrest Taylor, individually, but who was the agent of appellant, for the first annual premium, at the time the application was signed, was as follows:
"This receipt must be completed, detached, and given to the applicant by the agent when any advance payment is made.
"Receipt for Advance Payment on Account of Premium
"Ordinary Department .................... . 19 .... *Page 353 
"Received from .......... 100 Dollars, being a deposit on account of Applicant for Policy of Insurance in the Life Insurance Company of Virginia, for $ ...... on the life of ............ made this date, said deposit to be returned to the applicant if the Application be rejected. It is understood and agreed that no liability is incurred by said Company by reason of this deposit unless and until a policy is issued upon said Application and unless at the date of delivery of said Policy the Life-proposed is alive and in sound health and the remainder of the premium due on said Policy, if any, is paid in cash. In case the Policy is issued and the balance of the premium, if any, remains unpaid, this deposit shall be forfeited to the Company.
".............. Agent
"Note — Unless you receive your policy, or your money is returned within six weeks from date of this receipt, please notify the Company, giving the name of person to whom paid, the amount paid and the date of payment."
Upon the trial of the case, and after respondent had placed in evidence the application for the insurance, signed by Josey, and the form receipt issued him at that time, one Barney Fields, a witness for respondent, was allowed to testify, over the objection of appellant, that on October 30, 1918, in a conversation with Forrest Taylor, the agent of appellant who had procured the application from Josey, the said Taylor "told me that Jake Josey had got $3,000.00 of insurance on an application, and said that when it was approved, when he passed his examination and it was approved, it would be in effect from the date of the application." Fields further testified that on this occasion Taylor was trying to write him $5,000.00 in the same way, and made him the same offer.
We will later refer to other testimony of this same witness, admitted over the objection of appellant, but appellant's first four exceptions relate to the admissibility of the above testimony, and will be considered together. *Page 354 
Counsel for respondent strongly rely on the case ofCantor v. Reserve Loan Life Insurance Co., appearing first in 161 S.C. 198, 159 S.E., 542, 543, and afterwards appearing in 169 S.C. 338, 168, S.E., 848. The receipt issued to the insured in the Cantor case, after acknowledging the payment of $5.00 "in full for the first annual premium on $1,000.00 insurance," contained this additional statement, "The insurance shall take effect and be in force according to the terms of the policy for which this settlement is given." The receipt in the case under consideration refers to the amount paid by Josey as a "deposit." And the receipt then states in plain and unambiguous language that no liability is incurred by appellant by reason of the applicant having made this deposit unless and until a policy is issued upon the application and unless at the date of delivery of said policy the life proposed is alive and in sound health, etc. Again, in the Cantor case, the witness Wertz, who was allowed to testify as to the agreement had between the agent for the insurance company and the applicant, Samuels, at the time the receipt was given the applicant, while not in the employ of the insurance company, was an assistant to the agent of the company, and was present when the transaction took place. In the instant case there is a complete contract in writing, unambiguous in its terms, and there is nothing to explain in connection therewith, no fraud or mistake being charged, but the action being based solely on contract as evidenced by the application and receipt herein-before referred to and quoted from.
There is no testimony that Mr. Taylor, the agent of appellant, ever told Mr. Josey that his insurance, if the application was accepted, would be effective as of the date of the application, and therefore Mr. Josey could not have relied upon any such agreement. Mr. Fields does not claim to have been present at the time the contract was entered into between appellant's agent and the applicant, but his testimony relates entirely to a statement of fact and not of contract, which it is claimed the agent of appellant made *Page 355 
to him in reference to a contract with a stranger to him, contractually speaking.
In the case of Gilreath v. Security Life Trust Co., 170 S.C. 309,170 S.E., 445, relied upon by respondent, it will be noted that two of the Justices concurred in the result only. However, a reading of this opinion will disclose that Mrs. Gilreath, who was permitted to testify concerning statements made to her by the agents of the insurance company, had been consulted by the agents with reference to reinstating Mr. Gilreath's insurance, and the statements of the agents to her concerning which she was allowed to testify were in the nature of a report of what they had been able to accomplish; and the statement of the agents alleging to have been made to a brother of Mr. Gilreath, and which he was permitted to testify to, was in corroboration of the testimony of Mrs. Gilreath, and held competent for this reason.
In the case of McGuinn v. Aetna Life Ins. Co., 171 S.C. 136,171 S.E., 793, also relied upon by respondent, Mrs. McGuinn and her daughter were allowed to relate conversations between the insurance company's agent and the insured, to establish waiver of the terms of the policy.
In the case under consideration, there is no testimony to the effect that Mr. Taylor waived any of the provisions of the contract with Mr. Josey, or that Mr. Josey relied upon such waiver. Testimony that Mr. Taylor offered to do so with another party was clearly inadmissible, being obnoxious to the rule of res inter alios acta.
The respondent recognized that in order to establish any claim against appellant, it was necessary to prove a contract, and in the proof of his case, offered and there was admitted in evidence the application signed by Mr. Josey, and a form of receipt given Mr. Josey by appellant's agent as a part of the same transaction. The application and the receipt, as has heretofoer been pointed out, were concisely worded and free from ambiguity, and needed no explaining, and the testimony of the witness Fields as to the statement *Page 356 
of the agent Taylor to him, which has hereinbefore been set forth, was not admissible except upon the theory that it established waiver, and since nothing more than a conjecture could be indulged in that Mr. Taylor had made such statement to and agreement with Mr. Josey, accepting the testimony of the witness Fields at face value, it failed as showing any evidence of waiver, and was incompetent and inadmissible. We can well perceive, and some witness who was present when the agent of appellant and Mr. Josey were making the contract, testified that the agent told Mr. Josey when he delivered his note for the first annual premium to said agent, that if the application was accepted and policy issued, he, Josey, would be insured from the date of the receipt, that then, as in the Gilreath case, supra, Fields' testimony would have been admissible as corroboratory. But to allow testimony of this character, under the circumstances of this case, would open too wide the door to fraud, and could be made to vitiate and void the most solemn contracts in writing, with the aid of sympathetic juries. It is for this reason that the rule that parol testimony is inadmissible to vary the terms of a written instrument was established. Let it be noted that while the instrument given Mr. Josey at the time he made his note to Mr. Taylor, the agent of appellant, was denominated as, and was a receipt, it was also a contract, and the wording thereof did not call for an explanation.
The exceptions relating to this portion of the testimony of the witness, Fields, must be sustained.
Under this holding then, the contract as proven on the trial of the case was that the company incurred no liability under the application and receipt issued, until the application was received and approved at the home office of the appellant, the policy issued, and delivered to Josey duringhis lifetime and good health, etc.
We now take up Exceptions 5 and 6, relating to the admissibility of the testimony of the witness, Fields, to the effect that on November 26, 1918, the agent *Page 357 
of appellant was in Lydia, talked to him, and said he was sorry to learn of Josey's death; that "I had this policy, but just neglected to bring it out"; that he had had it for several days, but had not delivered it. There was also testimony by Fields that he was shown the policy on that occasion, but upon cross-examination it was developed that he did not see the policy in Josey's name, but said the agent stated to him, "Here is Jake's (Josey's) policy, but I can't deliver it to a dead man."
It is not in controversy that the application of Josey was received and approved at the home office of appellant, the policy applied for issued and mailed to Forrest Taylor, its general agent at Florence, S.C.
Under the decisions of this Court, the mailing of a policy to the agent of the insurer is a constructive delivery of the policy, if the other terms and conditions of the contract are met, and it was mailed to the agent with the intent that it be delivered. See Williams v. Philadelphia Life Ins. Co.,105 S.C. 305, 89 S.E., 675; Cantor v. Reserve Loan LifeIns. Co., 161 S.C. 198, 159 S.E., 542.
The testimony of the witness. Fields, to the substantive fact that the agent of appellant told him he had the policy of insurance for which Josey had applied on November 26, 1918 (the day on which Josey died), and that he had had it for several days, was therefore competent as tending to show there had been a constructive delivery. Where a constructive delivery is claimed, there cannot, of course, be any claim of waiver as to other conditions necessary to a binding delivery.
We now come to appellant's exception eight, alleging error on the part of the trial Judge in refusing to grant appellant's motion for a nonsuit; for a directed verdict and for a new trial. Under this exception, appellant argues the sole question was the admissible testimony sufficient to warrant the trial Judge in submitting to the jury the question of whether an insurance policy was issued and delivered. *Page 358 
We have just held competent the above-related testimony of the witness Fields, as going to show a constructive delivery of the policy of insurance during the lifetime of the insured. Now the question arises if the testimony of Fields comes within the scintilla rule as laid down by Mr. Justice Bonham, writing the opinion of the Court in Turner v.American Motorists Insurance Co., 176 S.C. 260,180 S.E., 55, in view of the fact that Mr. Fields was testifying entirely from his recollection as to the time of a conversation alleged to have taken place nearly sixteen years prior to the giving of his testimony, when three witnesses for appellant testified from written records made at the time of the transaction that the application of Mr. Josey was not approved and the policy not issued and not mailed to its agent until after the date of the death of Mr. Josey.
The writer hereof is of the opinion that the only reasonable inference which could have been deduced from all of the testimony was that the application of Mr. Josey was not accepted and the policy not issued and constructively delivered until after the death of Mr. Josey, and was therefore a question of law for the Court, and not a question of fact for the jury, but the other members of the Court participating in this case are of the opinion that the testimony of Mr. Fields made an issue for the jury to pass upon, and this exception is therefore overruled.
We have refrained from unnecessarily commenting on the testimony, since this case must go back for a new trial on the exceptions hereinbefore sustained.
Reversed, and remanded for a new trial.
MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHBURNE concur.
MR. JUSTICE CARTER dissents.
MR. JUSTICE BONHAM did not participate.