## BUFFALO BATT & FELT CORPORATION v. ROYAL MFG. CO.

District Court, W. D. New York. July 3, 1928.

**1. Corporations ⚖⟹668(15)—Maintenance of local office, resulting in continuous flow of products into state, subjects foreign corporation to service of process.**

Foreign corporation may be held to be doing business within state, so as to subject it to service of process therein, if establishment of local office results in flow of products of that company into the state with reasonable continuity.

**2. Corporations ⚖⟹668(15)—Maintenance of local office did not subject foreign corporation to service of process as doing business where movement of products into state was not shown.**

Foreign corporation, maintaining sales office in state, with salesmen hired at main office of company, whose sole duty was to solicit orders, which were transmitted to main office for acceptance, *held* not subject to service of process in state, as doing business therein, where it was not shown that the functioning of the office brought the corporation's products into the state in any quantity or with any degree of regularity, or that corporation entered into any contracts within the state.

At Law. Suit by the Buffalo Batt & Felt Corporation against the Royal Manufacturing Company. On defendant's motion to set aside the service of summons. Motion granted.

Simon Fleischmann, of Buffalo, N. Y. (Martin Clark, of Buffalo, N. Y., of counsel), for the motion.

Goldring, Sherman, Reisman & Killeen, of Buffalo, N. Y. (Benjamin D. Reisman and Edward Wolkind, both of Buffalo, N. Y., of counsel), opposed.

ADLER, District Judge. This is a motion for an order to set aside the summons issued herein and the service thereof upon the ground that the service of the said summons was not legally and properly made upon the defendant, and upon the further ground that the defendant, a corporation incorporated under the laws of New Jersey, was not at the time of the alleged service engaged in or doing business within the state of New York.

This action was originally instituted in the Supreme Court, Erie County, by the serv-ice of a summons alone on Jerome Selig and Gerald D. Heller, on September 15, 1927. The theory of the service was that one of them was the managing agent of the defendant's business conducted in the state of New York, such as the statute contemplates as a proper person upon whom process may be served. On October 4, 1927, an order was granted by the Supreme Court, Erie County, whereby the action so commenced was removed to this court pursuant to the federal statute. Thereafter defendant, appearing specially, made this motion. A number of affidavits, counter affidavits, and reply affidavits have been filed. The facts appear to be as follows:

The defendant, the Royal Manufacturing Company, is a New Jersey corporation, with its main office in Rahway, N. J. It has a sales office in the city of New York at 300 Madison avenue. At this sales office there are customarily three salesmen and two stenographers. The affidavit of the president of the defendant states that he uses this office when he is in New York, but that all his executive and financial duties as president are done at Rahway, N. J., exclusively; that the salesmen are hired at Rahway; that their sole duty consists of soliciting orders, which are not binding upon defendant, and transmitting them to the defendant at Rahway for its acceptance or rejection; that they have no authority to make prices and prices at which they solicit the orders are made in Rahway, and that they have no authority to collect or disburse money for defendant, nor any power to act in any financial way for defendant.

The defendant's name is on the office door, together with another corporation, the Savoy Oil Company, which shares the office and telephone with the defendant. Defendant's letterhead shows a New York office, as well as a Chicago and a Boston office, and one at Charlotte, N. C. Sales confirmation blanks and letterheads are kept in the New York office, but no account books, and all accounts are kept at Rahway, N. J. Defendant has a bank account in New York, in which deposits are made directly from the main office at Rahway. The New York salesmen solicit orders in New York and other parts of the United States and Canada.

The answering affidavits of the plaintiff are directed toward showing the relation of Heller to the business of the defendant in the office at New York City, and in showing the business operations of the defendant in its New York office. The contract upon which this action is based is stated in one place to

have been made in the New York office, but an examination of the photostat copy of the contract attached to the papers would seem to show that it was made in Rahway, N. J. Another business transaction conducted in the New York office of defendant is a contract made with an agent of the Eliot Mills, Incorporated, of Boston, Mass., for the sale of certain merchandise to be shipped from a southern mill shipping point to some point in Massachusetts. This contract was signed in the New York office by Heller, who states that the price of the merchandise and the conditions of the sale were fixed for him by the main office at Rahway, N. J. No other specific sale or contract for the sale of defendant's merchandise in the state of New York or in the New York office is set forth.

The secretary of the plaintiff corporation, in an answering affidavit, states on information and belief that payments covering said purchases, evidently referring to the contract with the plaintiff, and the contract set forth with the Eliot Mills Company, were "made at times to the main office and at times to the New York office of the defendant." He does not disclose the source of his information, and the record of these transactions presented to the court does not warrant the statement. There is no other evidence presented to the court on this motion of any course of business transactions being conducted in defendant's office in New York City, or of any movement of defendant's product into the state of New York, through the operations of the New York City office.

The first question is whether, on the above-stated facts, the defendant is doing business within this state in such a sense and in such a degree as to subject it to the service of process upon its agents within the state.

The leading cases decided in the Court of Appeals of New York state express an inclination to follow in their decisions the rules prescribed by the federal court, and cite the leading cases in the Supreme Court of the United States in support of their conclusions. Thus, in Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 115 N. E. 915, Judge Cardozo in his opinion recites the facts in International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, and says that the decision in that case is precisely applicable. This inclination to follow the decisions in the federal courts is stated in the opinion in Hamlin v. Barrett & Co., 246 N. Y. 554, 159 N. E. 648. In Holzer v. Dodge Brothers, 233 N. Y. 217, 135 N. E. 268, the Court of Appeals again shows its intention to follow the federal ruling by citing in its

opinion and basing its decision on People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537.

The decisions of the United States Supreme Court on this subject run along two lines, each of them set forth in International Harvester Co. v. Kentucky, supra. In that case the court distinguishes the case of Green v. Chicago, Burlington & Quincy Railway, 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916, which is the final authority for one line of decisions, holding that solicitation of orders alone is not doing business within the state. This case is not overruled, and the reasoning upon which the conclusion in that case was based was not questioned, in International Harvester Co. v. Kentucky, and the other cases following it, in which a different conclusion was reached.

The other line of cases, led by International Harvester Co. v. Kentucky, and followed in New York by Tauza v. Susquehanna Coal Co., present a set of facts in which there was something more than mere solicitation of business. In both the federal and the New York state cases it is stated that an essential part of the business of the foreign corporation, or some substantial part of its main business, must be done within the state, to justify the service of process upon its representatives there. People's Tobacco Co. v. American Tobacco Co., supra; Holzer v. Dodge Brothers, supra. In the cases already cited, and in many others, the court states that to find that the foreign corporation is doing business within the state, there must be a continuous course of business within the state, and not a single transaction.

Comparing the facts in the instant case with the facts in the leading cases cited, I find that there are lacking certain facts which would bring it within the ruling of the International Harvester and Tauza Cases. In the International Harvester Case, the court, after discussing the Green Case, clearly arrived at its decision that the harvester company was doing business within the state of Kentucky from the facts that, in response to orders received, there was a continuous course of shipment of machines into Kentucky, and that there was authority to receive payment in money, check, or draft, and to take notes payable at banks in Kentucky. The court says in its opinion that the question is a close one, and it very clearly indicates that it resolves the question on the ground of the movement of machinery into Kentucky and the receiving of payments

there. These were the facts which distinguished the case from the prior decision of the court in the Green Case.

The same reasoning determined the court in its decision in the Tauza Case. In his opinion in that case Judge Cardozo, discussing the Green Case, says that the orders in that case did not result in a continuous course of shipments from Illinois to Pennsylvania. He goes on to say: "In the case at bar, as in the International Harvester Case, there has been a steady course of shipments from one state into the other." Here, too, the determining factor is that, as a result of the solicitations, there was a steady flow of the products of the foreign corporation into the state. In the Tauza Case the evidence was that the agency in New York state regularly solicited and obtained orders, which resulted in continuous shipments from Pennsylvania to New York. In the International Harvester Case the evidence was that there was a continuous course of business in the solicitation of orders, and in response to them the machines of the harvester company were delivered within the state of Kentucky.

A well-considered case, in which the facts up to a certain point are identical with the instant case, is Haskell v. Aluminum Co. of America (D. C.) 14 F.(2d), 864. In that case the defendant maintained an office in Boston for the solicitation of business, but no contracts could be made there, no books were kept there, and no payments were made in the Boston office. These facts were presented at the hearing, with the additional fact that in the year 1925 the defendant sold and delivered to customers in Massachusetts goods to the total amount of more than $3,000,000. Substantially all of that amount represented transactions carried on, in part, at least, through the Boston office. The court in the opinion, in discussing the Green Case and the Harvester Case, calls attention to the fact that in the Harvester Case, in response to solicitation, there was a continuous course of shipment of machines into Kentucky. In the Haskell Case the evidence was that there was a continuous course of business and a large volume of merchandise flowing into Massachusetts as a result of the solicitations in defendant's office. It is clearly indicated that the decision that defendant was doing business in the state of Massachusetts was made on that ground.

[1, 2] The decisions, as I read them, lead to the conclusion that, if there results from the operations of an office established by a foreign company within the state a flow of the products of that company into the state with a reasonable degree of continuity, then that company may be held to be doing business within the state, so as to subject it to service of process therein. It is not enough to show, as was shown in the instant case, that the company had established an office in New York City, with a force competent to do business within the state. In order to show that it is doing business within the state, it must present evidence that as a result of the functioning of that office the product of the foreign company was regularly coming into the state in some quantity and with some degree of regularity. The evidence presented in this case did not disclose a single instance of the movement of defendant's products into the state of New York. The evidence did not show a single unquestioned case of a contract made in the New York office by an authorized representative of defendant. The evidence is that the office was there, but, despite numerous affidavits, there is no evidence before the court what business, if any, was being transacted in it. I am of the opinion that the facts in this case do not bring it within the ruling of the International Harvester Case, or the Tauza Case, or any of the other well-considered cases in which it was held that the foreign corporation was doing business within the state.

Having arrived at the conclusion that, upon the facts presented, the defendant was not at the time of the alleged service engaged in doing business within the state of New York, it is unnecessary to consider the question of the legality of the service of the summons upon the defendant.

The motion to set aside the summons issued herein, and the service thereof, is granted.